Our first case for argument this morning is the Windsor Condominium Association against the Philadelphia Insurance Company. Mr. Samplin. Yes, good morning. Thank you, Your Honor. May it please the Court. My name is Don Samplin. I represent the Philadelphia Indemnity. I know that Your Honor has read the briefs, so let me just very briefly summarize by saying that there hail damaged two sides or elevations of 110 buildings in the Windridge condominium complex back in 2014. No damage occurred to the other two sides, the north and east elevations. Philadelphia thereafter agreed to repair or repair. Windridge also demanded that we pay to replace the siding on the undamaged sides at an additional cost of $3.5 million. Philadelphia declined. Windridge brought this lawsuit, and that's why we're here today. What is the status of the appraisal proceeding? I don't believe that it has commenced, Your Honor. I'm not sure that that's a record, but there was, we did make the appointment, the nomination of an appraiser, but I don't believe it's commenced as of yet. So for all we know, the argument that you're presenting will turn out to be completely irrelevant. If you win on your position in the appraisal proceeding, this whole thing, this whole litigation is unimportant. It's important, it's very important to the parties, Your Honor, of course. Not necessarily. The point is you're asking us to answer a question that may well be totally hypothetical. We're asking you to review the district court decision. He answered a question that may well be hypothetical. Is it hypothetical? I wouldn't regard it as a hypothetical question, Your Honor. It may turn out that the appraisers will find that there is matching siding in the marketplace, or there may not be matching siding in the marketplace. Normally, we like to think that judicial opinions are more than hot air. I'm just advised that the appraisal is, in fact, over. Oh, well, that's different from it hasn't begun. So, what has happened in the appraisal? If I could consult with counsel, I'm not sure I should have a record, but I'll be glad to hear back, because this is open to all trial, and open to the public's questions. I'm told that the dollar figures have been determined, Your Honor, but there's been no decision at this point with respect to the matching issue. That's my understanding. I'm a little uncertain. How is the appraisal over if it hasn't answered the central question? Well, I think one of the questions was... I'll tell you what. You're obviously not prepared for this. I find it difficult to believe that a lawyer would not be prepared for this perfectly obvious question. But I would appreciate it if both parties would file supplemental memoranda within seven days explaining what has happened in the appraisal. I'd be glad to do that, Your Honor. So far as my preparation is concerned, I'm prepared to talk about matters of record. The appraisal is not a matter of record at this point. It's been ordered to appraisal, but that's it. It's at least relevant to the question of appellate jurisdiction. I'm not... Well, I understand Your Honor's view on that. I'm not sure that... I think there's been a final decision in the trial court regardless of the outcome of the appraisal. There has been a final decision in the trial court on the theory of Green Tree Financial if appraisal is the same thing as arbitration. Is it? That's... Yes, it is, Your Honor. It's... And why? I'm sorry. Is it exactly the same thing? No, it is not, Your Honor. But it's treated the same for purposes of appeal. And we've cited case law in the briefing indicating that it's to be treated the same as an arbitration for purposes of finality. So to that extent, yes, it is the same. And I believe there's jurisdiction here, and so this is not a moot appeal, regardless of the outcome of the appraisal. This is not a moot appeal. This court has jurisdiction. So we'll be glad to... I don't know why this case would not be moot if the appraiser says there is matching citing in the market. So the premise of the district court's decision turns out to be wrong. Well, my understanding based upon the record is that there was matching citing available for about a year and a half after the tail damage occurred in 2014, but there is no longer matching citing available. That is my understanding based upon the evidence of record. Is that what the appraiser finds? I'm really not asking for you to restate your position. I'm trying to find out what the appraiser has determined, and this is presumably a binding determination. It will bind the parties. You say it's arbitration. Well, then it's binding. It's conclusive. Right? It's not what your position is. It's what the appraiser finds. It's what the appraiser finds. That is true, Your Honor. That's the best I can do at this point. Yeah. I don't know... If we wind up reaching the merits, Mr. Sampin, is it your position that aesthetics never matter in evaluating the sufficiency of repair? I won't say that aesthetics never matter. I will say that the policy covers direct physical loss. Well, right. Does it matter? Yes. Perhaps it does matter, but our coverage obligation is to pay to repair or replace direct covered damage. Okay. So... Go ahead. Well, so what I don't understand is why the phrase damaged property here is not ambiguous. Why damaged property is not ambiguous? Is what's damaged the whole building? No. Is it just the one panel? What happens... What's your position, for example, if flood damage causes damage to the bottom four feet of exterior cladding and you can't be matched in the market? Well, we would pay... You get a stripe effect? We would pay to repair the direct physical damage. That would be our obligation to the policy. So let's suppose we're talking about an automobile and I'm driving my car and I sideswipe a guard rail. I damage all of the body panels on the right side of the car. I take it in. Turns out they can all be replaced, but only in a color that doesn't match. Do I get a half gray, half red car? Is that what I get under this policy? I would... My belief that in a damage of that scale, Your Honor, that as an accommodation, regardless of what the policy provides... Yeah, but we have to figure out what the policy provides. So you tell us what the policy provides. The policy here provides coverage for direct physical damage. So in my hypothetical, I would get a car that's one color on one side and a different color on the other side pursuant to what's damage property. Two-tone cars used to be in. Usually not left and right, however. My belief is that in a situation such as that, the insurer would agree to pay... What you're relying upon require as applied to that hypothetical. Applied to that hypothetical, the policy language requires the repair or replacement of direct physical damage. Okay. Now, let's talk about these condominiums. Are you agreeing that every single piece of vinyl siding on the damaged sides of the building was totally destroyed, was turned into shredded wheat? There's been no finding to that effect, Your Honor. You're not even contending. We haven't contended that. Council, trying to talk over a judge is not helpful advocacy. Of course, Your Honor. Suppose what happened is that every other panel on the west side of the building is broken. What does the policy provide? Does it provide that every other strip of siding will be replaced? The even-numbered strips will be replaced and the odd-numbered strips will be left as they are. It doesn't provide that. Is that what the policy provides? It doesn't provide that, Your Honor. It provides for the repair... The odd-numbered strips have not been physically damaged. Only the even-numbered strips have been physically damaged. I understand, Your Honor. What the policy says is direct physical damage. What Philadelphia has agreed to do is... I'm not asking what Philadelphia has agreed to do. I'm asking, like my colleague, what the policy provides. In your view, what does the policy provide about even and odd damage on one side of the building? The policy provides for the repair or replacement of direct physical damage. And what does that mean with respect to even and odd-numbered strips of siding? Well, what does it mean? It means that if a particular strip of siding is damaged, we would repair... Just that strip. All right. Now suppose the strip is 20 feet long and what's damaged is a section in the middle. Yes. What does the policy provide?  The policy provides for the repair or replacement of direct physical damage. I understand that. And in my hypothetical, 2 inches in the middle of a 20-foot strip of vinyl siding has been destroyed by hail. What does the policy provide? Does it provide that 2 inches will be replaced or that the 20-foot strip will be replaced? And you're not asking me what Philadelphia has agreed to do here. No, I'm asking what the policy provides. It provides for direct physical damage. And so we would agree to... I'm not asking what you would agree to do. I understand, Your Honor. Under the policy... Do you? You're just not getting my question. I am asking whether, in your view, direct physical damage is limited to the part of the siding, the part of each piece of the siding that is dinged by the hail, or does it include the whole strip? In one sense, the whole strip has been physically damaged. In another sense, only the part that the hail hit has been physically damaged. Which of these is the right meaning of physical damage? I think under those circumstances, Your Honor, the whole strip would be damaged only because to repair the damage itself... I hope you can see where this is going. Then go back to my even-and-odd-numbered strips possibility. Do you think the whole side of the building has been damaged because every other strip has been damaged? Do I think so? I would rather... You are a representative of Philadelphia in the insurance. I am, Your Honor. I'm not asking what you personally think. You speak for your client. The clients agreed to pay the whole side. I'm not asking what the client agreed. I'm asking what the policy means. We've been over this, you know. We have, Your Honor. And I think given the fact that Philadelphia has agreed to replace the whole side on an elevation-by-elevation basis... I wish you would address my hypothetical rather than tell... Philadelphia's view is that the whole side... We've also been through whether it helps you to try to talk while the judge is asking a question. I apologize, Your Honor. I apologize. I give up. I just give up. Well, the... I think one thing is clear, Your Honor. There has been no damage to the north and east elevations. All the parties agree on that. That's what the district court said. That's what Windridge said in the district court. That's what Windridge has said a half a dozen times here on appeal. There is no damage to the north and east elevations. The policy covers direct physical damage. So regardless of how one comes out on the hypotheticals about damage to part of a side or damage to the whole side... Or part of a building. There is no damage to the north and east elevations here. And there is no obligation, therefore, to pay to repair or replace those elevations. I think we understand your position. And I see my time is almost up. I'll reserve whatever time I have left over. Thank you. Thank you, Mr. Champin. Mr. Colella. Good morning, Your Honor. I'd like to address what you, the hypotheticals you just raised first, unless you want me to go to the mootness question. What can you tell us about the results of the appraisal? We understand that the appraisal has been completed and that there was a finding that there was no matching materials available. Could you raise your voice? No, I didn't ask you to raise the microphone. I asked you to raise your voice. Our understanding is that the appraisal found that there was no matching materials. But we will submit a supplemental... Please do. A supplemental brief. Our interpretation of the policy captures the hypotheticals that you just... So what happens if just one of the 110 buildings is damaged and you can't match it to match the rest of the community? Well, if the physical appearance, and again, physical damage means a change in appearance, and that's clear. I don't think we have a disagreement on that. And so one building is, the physical appearance of one building is changed. I think in this case, all 110 buildings were hit. That's not my question. One of the 110 buildings is damaged and you cannot repair it so that it matches the other 109. Is the insurance company required to replace all of the siding on all 110 buildings? Our position would be that if there's a loss in value, depending on how the property is defined in the policy here, it's all the buildings. If there's a loss in value to the property as a whole, we would argue that yes, I'm not sure in that hypothetical if one building is damaged, that the entire property as a whole, the value would be diminished. Why are 110 buildings the property as a whole rather than each building? Well, the... That's part of the problem here. The district court thought that each building is the property, that each building has been damaged, and each building has four sides. Well, actually six, but no one's worried about the roof, it seems. Why is each building the right unit rather than each side the right unit? Or each piece of siding the right unit? Sure, the definition of covered property is buildings. And that's our interpretation. That's what that means. Some of the cases that are before the court have language where they say parts of buildings or parts of a structure. In this case, it doesn't say that. It just says buildings. Covered property means buildings. And so you have to look at the buildings as a whole. So if you took a photo of the building, let's go to your hypothetical. Let's say this occurred on the same day. On May 19th, you took a photo of the building. On May 20th, you took a photo. It's going to look different. And our interpretation is that's physical damage because of the change of appearance. Let me go back. Suppose it's just one building that's damaged. Why would you be entitled? And you find somebody to come in and say, really, the whole complex is less attractive because we've lost the aesthetic integrity. And so there's damage to the whole property. And the only way to restore this is to replace all of the siding on all 110 buildings. Well, that would be a question of fact among experts about whether there's a loss in value. Suppose there is. Okay. That there's a slight change in the value of the overall property because you can't quite match the colors. And the plain meaning of damage is loss in value. So if there is a loss in value, then we would argue that the entire complex has to be redone. Do you really want to go there? Well, I mean, we're just going based on the plain language. And if covered property includes all of 110, then yes. If the language is different and it carves out property, then that's a different story. So then in the slate roof example, we've all read these cases of the damage to the slate roof. Suppose it's one tile at the corner that's been damaged by a falling tree limb. You can't quite match it exactly. You had a whole new slate roof? Well, if an expert is going to say that one little tile is going to reduce the value or lose value in the entire roof, that probably wouldn't be a credible finding, in my opinion. But in theory, if somebody were to put that evidence forward and the trier of fact agreed with it, which is doubtful, then we would say yes, based on just the plain language of what damage means, which is loss in value. Okay. The opinion is there's a loss in value of $1,000 to the house because of the difficulty in matching the aesthetics of the rest of the roof. Is the insurance company required to spend the money needed to replace the entire roof so that the tiles match? Well, in that case, they would have an option under the policy of just paying the $1,000, potentially, as opposed to replacing the entire roof. And that would be the same for your hypothetical 110 buildings. If there's one building, they would have the option of just paying for the loss in value. They have that option. But if we're looking at strictly in this particular case, if we're just looking at replacement, that would be our position, again, based on the plain meaning of damage. Okay. Can I ask you, Mr. Colella, your brief seems to take the position that the enactment of legislation in other states, but not in Illinois, helps you. How do you – I don't follow that logic. Well, what's happening now with the rise of natural disasters is a lot of the legislatures and the states that are typically hit by it are avoiding all of this litigation and coming down with a statute that says you have to require matching. Right. But Illinois has not. That's correct. But there's no evidence in the record that they actually considered it and rejected it. So our view is that when you add the 10 states and then you add the case law, which are all trending in that direction, our position is that, and based on the Illinois Supreme Court's position, when they haven't decided a question, they look around and see what everybody else is doing. When you put all that together in the pot, it's in the direction of requiring matching. For a lot of the reasons that you're – the hypotheticals you raised here, those are the issues that are problematic. So in this particular case, we have a bunch of mismatched buildings, and that can't possibly be what a replacement cost policy is all about. And so if there's – I have more time, but if there are any other questions, I think I'm done. Well, maybe I don't understand it. Are all the buildings involved or just one building? All 110. So there's damage to all 110. Correct, on the south and west elevations. None of them were spared. Correct, because that's what the record shows, yes. Thank you, Your Honor. Thank you, Mr. Colella. Mr. Semple. Yes, sir. I'll be very brief here. I guess one other point I would make here with respect to the coverage section of the policy. It requires not only physical damage, as we've talked about earlier on, but direct physical damage. And the aesthetic issue that's been raised here is anything but direct. And what do we mean by direct? Well, we can look at the advance cable case that was cited in the brief, the absence of intervening causes. The hail hitting the sides of the building, that's direct damage, causing pings or dings or indentations in the buildings. But for the aesthetic issue to arise, a number of other events have to occur. One is the replacement of the damaged siding. That didn't take place here until years later. My understanding, it took place sometime in 2018. A second factor that had to occur here is for the siding manufacturer to decide not to manufacture a color of an exact match that was already on the building. That's a marketplace decision. We don't insure over a marketplace decision. It's just not a part of our policy. I'm sorry? Thank you, counsel. The case is taken under advisory.